DeARCY HALL, J.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 25 2019 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MISC 19-1638

| In re Application of Doosan Heavy Industries and Construction Co., Ltd. for an Order Directing Discovery from Liberty Maritime Corporation Pursuant to 28 U.S.C. § 1782 | Index No. _____ <br><br> Memorandum of Law in Support of *Ex Parte* Petition for Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782 |
|---|---|

## I. INTRODUCTION

Petitioner Doosan Heavy Industries and Construction Co., Ltd. ("Petitioner" or "Doosan") hereby petitions this Court pursuant to 28 U.S.C. § 1782 for assistance in connection with foreign legal proceedings.

Petitioner seeks an order authorizing the issuance of subpoenas to Liberty Maritime Corporation ("Liberty Maritime"), a corporation that maintains its headquarters and principal place of business in this district and that has engaged in shipping related activity in a port operated by Kuwait Gulf Link International for Ports, Warehousing and Transport KSCC ("KGLPI"), requesting documents and a deposition witness concerning the business relationship between KGLPI and Liberty Maritime. Such discovery is sought in aid of pending judicial proceedings in Egypt, as well as contemplated judicial proceedings against KGLPI in other jurisdictions, in which questions concerning the existence, custody, ownership, and character of KGLPI's assets and KGLPI's relationship with its corporate affiliates are likely to arise and require adjudication.

## II. FACTUAL BACKGROUND

### A. THE AWARD AND ONGOING FOREIGN PROCEEDINGS

On January 15, 2018, an arbitral tribunal of the International Chamber of Commerce issued

an award (the "Award") in Petitioner's favor and against Damietta International Ports Company SAE ("DIPCO") and its 29.975% shareholder, KGLPI, in the amount of US$ 74 million, relating to a contract for the supply of ship-to-shore gantry cranes. Declaration of Joshua S. Wan ("Wan Decl.") ¶ 3. Neither KGLPI nor DIPCO, which are jointly and severally liable for the Award, has paid any part of the Award. *Id.* ¶ 4.

As a result of KGLPI's and DIPCO's refusal to satisfy the Award voluntarily, Doosan has commenced judicial enforcement proceedings in Egypt, and has obtained a precautionary attachment in that jurisdiction. *Id.* ¶¶ 5-6. In addition, Doosan is considering commencing judicial proceedings in, at a minimum, the United Arab Emirates ("UAE"), Kuwait, and Oman in connection with its efforts to enforce the Award, as Doosan has learned that KGLPI and/or its corporate affiliates do business in each of these jurisdictions. Doosan has acquired information suggesting that KGLPI commingles funds with, and/or fails to observe proper corporate formalities with respect to, its corporate affiliates, such that Doosan may seek to enforce the Award, and/or any resulting judgment, against one or more of those affiliates. *Id.* ¶ 9. This petition seeks discovery of information in the possession of Liberty Maritime, who Doosan believes is a commercial counterparty of KGLPI, concerning its payments to KGLPI, as such information will assist Petitioner in enforcing the Award and will assist foreign courts in adjudicating issues relating to ownership of KGLPI's assets and KGLPI's corporate form, which likely will be in question in the anticipated enforcement proceedings.

**B.    RELATIONSHIP BETWEEN KGLPI AND LIBERTY MARITIME**

KGLPI is a Kuwaiti company which develops, operates, and manages container terminals and roll-on/roll-off operations in various countries in the Middle East and Africa, including Kuwait, UAE, and Oman. *Id.* ¶ 7. According to Kuwait and Gulf Link Transport Company's ("KGL Group") 2018 Annual Report, KGLPI is an affiliate of the KGL Group, which owns several

companies that provide transportation, logistics, port management, shipping, and freight forwarding services. *Id.* Other affiliates of the KGL Group include KGL Logistics, KGL Transportation, KGL Stevedoring, and KGL General Trading & Contracting. *Id.*

According to KGL Group's website, the predecessor company of the corporation that is now known as the KGL Group became the sole stevedoring contractor in Shuwaikh Port in the 1970s and the main operator of the Shuaiba Container Terminal Port ("Shuaiba Port") in Kuwait in 1996. *Id.* ¶ 8. An information sheet published by SOAS University of London lists KGLPI as the port operator with respect to "container terminals and Roll-On-Roll-Off (RORO) operations" for the Shuaiba Port. *Id.* In December 2017, news sources reported that KGLPI was "blacklisted" by the Kuwait Ports Authority, which forbade KGLPI from conducting port operations at the Shuaiba and Shuwaikh Ports, although Petitioner believes that KGLPI has, by virtue of an order of a Kuwaiti court, been permitted to continue its operations at both the Shuaiba and Shuwaikh Ports. *Id.*

Public sources, including KGL Group's own website, indicate that KGL Group and KGLPI have had a longstanding relationship with the United States military, providing transportation, logistics, and food distribution services in the Middle East under contracts awarded by various government agencies. *Id.* ¶ 10. Procurement documents published by the United States government show that KGLPI was awarded stevedoring and transport contracts through Kuwaiti ports by the United States Department of Defense ("DOD"), the largest of which is valued at approximately US$ 25.5 million. *Id.*

Upon information and belief, Petitioner understands that although the various subsidiaries of the KGL Group purport to be independent companies that operate separate businesses, there is significant intermingling of assets between the various affiliates, including between KGLPI and

other KGL Group entities. *Id.* ¶ 9. Specifically, Petitioner believes that funds are transferred between KGL Group entities through dividend payments upwards to parent companies and through leasing of services and sharing of equipment between entities within KGL Group. *Id.*

Liberty Maritime is a New York corporation with its principal place of business in this District in Lake Success, New York. *Id.* ¶ 12. Liberty Maritime is a shipping company that operates six U.S. flag and various foreign flag vessels that transport commodities and roll-on/roll-off cargos around the world for various U.S. government agencies, the United Nations, private voluntary organizations, and private commercial entities. *Id.* Liberty Maritime's U.S. flag roll-on/roll-off vessels are operated through its affiliate Liberty Global Logistics LLC ("Liberty Global"). *Id.* The Shuaiba Port, for which KGLPI was the main operator prior to 2018, and the Shuwaikh Port, for which KGLPI was the sole provider of stevedoring services prior to 2018, were both listed as scheduled ports of call for Liberty Global-operated vessels. *Id.* ¶ 13.

Liberty Maritime also provided transportation and shipping services to the United States government. *Id.* ¶ 14. According to Liberty Maritime's website, over the past 25 years, the company has provided food aid shipments for various U.S. government agencies including the United States Departments of Agriculture, State, and Defense. *Id.* Procurement documents published by the United States government show that Liberty Global has been awarded 21 contracts by the DOD with a place of performance in Kuwait since 2013. *Id.* Many of these contracts relate to "transportation shipments," the largest of which is valued at approximately US$ 19 million. *Id.* Furthermore, upon information and belief, Petitioners understand that KGLPI fulfilled a DOD contract for the transportation of U.S. military vehicles through Liberty Maritime's roll-on/roll-off vessels in the Shuaiba Port. *Id.* ¶ 15.

Based on these facts, Doosan reasonably believes that KGLPI, as the operator of the Shuaiba Port and stevedoring contractor for the Shuwaikh Port, is likely to have serviced Liberty Maritime vessels during their calls at those ports, and that there have likely been transactions between KGLPI and Liberty Maritime, the records of which would contain information that would assist Doosan in determining the location of assets potentially subject to the Egyptian attachment order and/or whether other KGLPI entities are proper defendants in the further proceedings that are under contemplation.

## III. ARGUMENT

Petitioner is entitled to the discovery sought through this application. 28 U.S.C. § 1782 provides, in pertinent part, as follows:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

Each of the statutory prerequisites for this Court to authorize the discovery sought herein is present. Petitioner is an "interested person" within the meaning of 28 U.S.C. § 1782 and is entitled to seek assistance thereunder. The discovery sought is for use in both pending and anticipated foreign judicial proceedings, any of which would properly be considered a "proceeding before a foreign or international tribunal." Petitioner anticipates that the judicial proceedings will involve questions regarding KGLPI's relationship with its corporate affiliates as well as the existence, custody, ownership, and character of KGLPI's assets that may be subject to execution by courts in those countries (or others) in aid of the Award. Finally, Liberty Maritime resides and is found in this District.

Moreover, Doosan's application satisfies the discretionary criteria established by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). Liberty Maritime will not be a participant in any of the foreign proceedings, and Liberty Maritime is not domiciled in any of the foreign jurisdictions, so the foreign tribunals cannot order Liberty Maritime to produce the evidence sought hereby. *Id.* ("[N]onparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid."). The proceedings are judicial proceedings relating to a duly-rendered arbitral award, and may assist the Egyptian courts in enforcing the attachments they have rendered. The request does not seek to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Id.* at 264-65. Finally, allowing Petitioner to obtain the requested discovery concerning KGLPI's assets is likely to assist Petitioner in making knowledgeable decisions and avoiding the risk of fruitless and wasteful litigation.

Granting the discovery sought hereby would also promote the strong public policy favoring the enforcement of international arbitration awards and the expeditious resolution of international disputes. *See, e.g., Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). The states in which Petitioner's enforcement actions are pending and within reasonable contemplation are all signatories of the New York Convention, and therefore the Award is subject to recognition and enforcement in each anticipated jurisdiction. The Court's grant of judicial assistance would permit Petitioner to appropriately target their anticipated litigation efforts among those states and promote the policies embodied in the New York Convention.

## IV. CONCLUSION

For the forgoing reasons, Petitioner respectfully requests that the Court grant the Petition and authorize Petitioner to issue subpoenas to Liberty Maritime in the form attached hereto as

Appendix A, and authorize Petitioner to issue additional subpoenas for the production of documents and/or depositions of Liberty Maritime as Petitioner reasonably deems appropriate and as are consistent with the Federal Rules of Civil Procedure.

Dated: New York, New York
       June 25, 2019

Respectfully submitted,

/s/ James E. Berger

James E. Berger (JB 6605)
Joshua S. Wan (JW 7074)

KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100
Fax: (212) 556-2222
jberger@kslaw.com
jwan@kslaw.com

*Attorneys for Petitioner Doosan Heavy Industries and Construction Co., Ltd.*