DeARCY HALL, J.

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 25 2019 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

In re Application of Doosan Heavy Industries and Construction Co., Ltd. for an Order Directing Discovery from Liberty Maritime Corporation Pursuant to 28 U.S.C. § 1782

Index No. MISC 19-1638

Declaration of Joshua S. Wan in Support of *Ex Parte* Petition for Assistance in Aid of a Foreign Proceeding Pursuant to 28 U.S.C. § 1782

I, Joshua S. Wan, declare as follows:

1. I am an attorney duly admitted to practice in New York and before this Court. I am associated with the law firm of King & Spalding LLP, attorneys of record for Doosan Heavy Industries and Construction Co., Ltd. ("Petitioner" or "Doosan") in this action. The facts set forth herein are personally known to me, and, if called as a witness, I could and would testify competently thereto.

2. Petitioner submits this application for assistance in aid of foreign proceedings that are currently pending and within reasonable contemplation, in connection with an arbitral award (the "Award") rendered in its favor against the Damietta International Ports Company SAE ("DIPCO") and Kuwait Gulf Link International for Ports, Warehousing and Transport KSCC ("KGLPI"). Both KGLPI and Doosan have refused to satisfy the Award, and Petitioner has commenced judicial proceedings in Egypt (the domicile of DIPCO) to enforce it. In addition, Petitioner is investigating commencing litigation in other jurisdictions, including, *inter alia*, Kuwait, the United Arab Emirates ("UAE"), and Oman, as KGLPI and/or its corporate affiliates do business in each of these countries.

## I. THE AWARD AND ONGOING FOREIGN PROCEEDINGS

3. On January 15, 2018, an arbitral tribunal of the International Chamber of Commerce issued the Award in Petitioner's favor and against DIPCO and its 29.975% shareholder, KGLPI, in the amount of US$ 74 million. The Award, a true and correct copy of which is attached hereto as **Exhibit A**, imposed joint and several liability on KGLPI and DIPCO.

4. Neither KGLPI nor DIPCO has paid any part of the Award.

5. Doosan has filed precautionary attachment proceedings in Egypt against KGLPI and DIPCO to attach assets held at banks in Egypt. The South Cairo Court has approved Doosan's application to attach any assets of KGLPI or DIPCO held at eleven Egyptian banks, and the Giza Court has approved Doosan's application to attach any assets of KGLPI or DIPCO held at seven Egyptian banks. These precautionary attachments have the effect of freezing the attached property, preventing the Egyptian bank from disposing or transferring the assets of KGLPI or DIPCO. The New Cairo Court referred Doosan's application to attach assets at thirteen additional Egyptian banks to an enforcement judge to adjudicate.

6. The Cairo Court of Appeal, which has jurisdiction to review applications to waive Egyptian bank secrecy requirements, has rejected Doosan's application to waive bank secrecy requirements for the banks subject to the precautionary attachment orders. Doosan intends to challenge the Cairo Court of Appeal's decision.

## II. RELATIONSHIP BETWEEN KGLPI AND LIBERTY MARITIME

7. KGLPI is a Kuwaiti company which develops, operates, and manages container terminals and roll-on/roll-off operations in various countries in the Middle East and Africa, including Kuwait, UAE, and Oman. According to Kuwait and Gulf Link Transport Company's ("KGL Group") 2018 Annual Report, a true and correct copy of which is attached hereto as **Exhibit B**, KGLPI is an affiliate of the KGL Group, which owns several companies that provide

transportation, logistics, port management, shipping, and freight forwarding services. Other affiliates of the KGL Group include KGL Logistics, KGL Transportation, KGL Stevedoring, and KGL General Trading & Contracting. Ex. B at 65. KGL Group also owns, in part or in whole, several subsidiaries incorporated in Kuwait, UAE, Qatar, and Sudan. *Id.* at 69.

8. According to KGL Group's website, the predecessor company of the corporation that is now known as the KGL Group became the sole stevedoring contractor in Shuwaikh Port in the 1970s and the main operator of the Shuaiba Container Terminal Port in Kuwait in 1996. An information sheet providing data on Kuwaiti ports published by SOAS University of London, a true and correct copy of which is attached hereto as **Exhibit C**, lists KGLPI as the port operator with respect to "container terminals and Roll-On-Roll-Off (RORO) operations" for the Shuaiba Port. According to news sources, KGLPI was "blacklisted" by the Kuwait Ports Authority in December 2017, forbidding it from conducting port operations at the Shuaiba and Shuwaikh Ports, although Petitioner believes that KGLPI has, by virtue of an order of a Kuwaiti court, been permitted to continue its operations at both the Shuaiba and Shuwaikh Ports. True and correct copies of these news articles, which were published on *Mubasher*, *ForeignPolicy.com*, and *Kuwait Times* are attached hereto as **Exhibit D**.

9. Upon information and belief, Petitioners understand that KGLPI commingles funds with, and/or fails to observe proper corporate formalities with respect to, its corporate affiliates. Although the various subsidiaries of the KGL Group purport to be independent companies that operate separate businesses, there is significant intermingling of assets between the various affiliates, including between KGLPI and other KGL Group entities. For example, KGL Transportation, which holds a 38.92% stake in KGLPI, has been known to lease vehicles to KGLPI. In addition, funds are transferred between KGL Group entities through dividend

3

payments upwards to parent companies and through leasing of services and sharing of equipment between entities within KGL Group.

10. According to its website, KGLPI has partnered with the United States military since 1994 to provide transportation, logistics, and food distribution services to the Middle East. Procurement documents published by the United States government, a true and correct copy of which is attached hereto as **Exhibit E**, show that KGLPI has had contracts with various agencies within the United States Department of Defense ("DOD") since 2013. Of these DOD contracts awarded to KGLPI, a number are stevedoring and transport contracts through Kuwaiti ports, the largest of which is valued at approximately US$ 25.5 million. Ex. E at 1.

11. DIPCO is an international consortium led by KGLPI, which entered a 40-year concession agreement in 2006 with the Egyptian state-owned Damietta Port Authority to develop, build and operate the facility at the Damietta Port. In November 2018, KGLPI commenced a US$ 1.1 billion claim against Egypt following the project's cancellation. A true and correct copy of an article in the Global Arbitration Review discussing KGLPI's claim against Egypt is attached hereto as **Exhibit F**.

12. Liberty Maritime Corporation ("Liberty Maritime") is a New York corporation with its principle place of business in New York. Liberty Maritime is a shipping company that operates six U.S. flag and various foreign flag vessels that transport commodities and roll-on/roll-off cargos around the world for the U.S. government, the United Nations, Private Voluntary Organizations, and private commercial entities. According to its website, a true and correct copy of which is attached hereto as **Exhibit G**, Liberty Maritime's U.S. flag roll-on/roll-off vessels are operated through its affiliate Liberty Global Logistics LLC ("Liberty Global").

13. The Port of Shuaiba, for which KGLPI was the main port operator prior to 2018, is listed as a scheduled port of call on four of Liberty Maritime's vessels on Liberty Global's May 30, 2019 U.S. flag service schedule. A true and correct copy of Liberty Global's U.S. flag service schedule as of May 30, 2019, is attached hereto as **Exhibit H**. The Shuwaikh Port, for which KGLPI had been the sole stevedoring contractor since the 1970s, is listed as a scheduled port of call for two of Liberty Maritime's vessels. A true and correct copy of Liberty Global's commercial service schedule as of May 31, 2019, is attached hereto as **Exhibit I**.

14. Liberty Maritime also provided transportation and shipping services to the United States government. According to Liberty Maritime's website, over the past 25 years, the company has provided food aid shipments for various U.S. government agencies including the United States Departments of Agriculture, State and Defense. Procurement documents published by the United States government, a true and correct copy of which is attached hereto as **Exhibit J**, show that Liberty Global has been awarded 21 contracts by the DOD with a place of performance in Kuwait since 2013. Many of these contracts relate to "transportation shipments," the largest of which is valued at approximately US$ 19 million.

15. Upon information and belief, Petitioners understand that KGLPI fulfilled a DOD contract for the transportation of U.S. military vehicles through Liberty Maritime's roll-on/roll-off vessels in the Shuaiba Port.

16. Petitioner seeks *ex parte* relief because, as the Second Circuit has held, applications for judicial assistance pursuant to 28 U.S.C. § 1782 are appropriately brought on an *ex parte* basis because the respondent may challenge the subpoena after it is served. *See Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*. The respondent's due process rights are

not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." (citations omitted)).

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
June 25, 2019

_____
Joshua S. Wan